**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA ROSS-DAVIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00689-MAL |
| | ) | |
| | ) | |
| CITY OF VINITA PARK, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

Before the court is Defendants City of Vinita Park ("City") and Chief John Buchanan's Motion to Dismiss the First Amended Complaint (Doc. 21). For the following reasons, the motion is **GRANTED**.

## I. Facts and Background[1]

This case arises out of former police officer Marcellis Blackwell's sexual abuse of Plaintiff Joshua Ross-Davis (Doc. 20 at ¶ 32–47). Blackwell was an officer for the North County Police Cooperative. *Id*. at ¶ 12. Defendant Vinita Park is the municipal entity that manages the North County Police Cooperative, hires and supervises employees, sets policies, and trains officers. *Id*. at ¶ 3. Defendant Chief Buchanan managed the operations of the North County Police Cooperative. *Id*. at ¶ 5.

On May 14, 2023, two officers arrived at Ross-Davis's home, including Blackwell. *Id*. at ¶ 20. Before that date, Blackwell had pulled over Ross-Davis without cause several times. *Id*. at ¶ 21. When police arrived, they put Ross-Davis in handcuffs, and Blackwell placed Ross-Davis in Blackwell's patrol car. *Id*. at ¶¶ 23–24. Blackwell then asked the other officer to leave so Blackwell could transport Ross-Davis alone. *Id*. at ¶ 27. While transporting Ross-Davis, Blackwell made inappropriate sexual comments, including asking Ross-Davis about his sexual relationships and telling Ross-Davis that Blackwell was a "swinger." *Id*. at 33–34. Blackwell

[1] All facts pled in the complaint are assumed true when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 556 (2007).

drove his vehicle to a secluded area, where he then opened the back door nearest to Ross-Davis. *Id*. at ¶¶ 36–38. Blackwell turned off his body-worn camera and took out his cell phone and began recording his interaction with Ross-Davis. *Id*. at 39–40. While Ross-Davis was restrained in the back of the police vehicle, Blackwell pulled Ross-Davis' pants half-way down and placed his hand on his genitals and moved his hand along his genitals. *Id*. at ¶ 41. Blackwell stopped touching Ross-Davis' genitals, then reached back and touched Ross-Davis' genitals a second time. *Id*. at 44.

Blackwell then took Ross-Davis to the police station. *Id*. at ¶ 46. Blackwell told an Intake Manager whose name is unknown (and who is a defendant in this case) to record that Blackwell had brought Ross-Davis to the police station and would now transport him back home. *Id*. at ¶ 48. Blackwell then took Ross-Davis home and told him he could arrange a meeting with Blackwell. *Id*. at 52–53.

Blackwell has been indicted in connection with the sexual abuse of nineteen victims between November 8, 2022 and June 5, 2023. *Id*. at ¶ 72. Blackwell's abuse of the other victims mirrored his actions with Ross-Davis, where he would deactivate his body camera and transport victims to secluded areas, requiring him to drive greater distances than necessary. *Id*. at ¶¶ 73–75. Ross-Davis alleges that during these encounters Blackwell would file false and fraudulent police reports and that Chief Buchanan failed to review these reports, Blackwell's mileage records, and Blackwell's body camera footage. *Id*. at ¶¶ 78–83.

Ross-Davis alleges that Defendant North County Police Cooperative failed to investigate Blackwell prior to hiring him. *Id*. at ¶¶ 89–96. Ross-Davis believes that Blackwell previously went by the name Willis Green Overstreet III and that Blackwell was previously involved in fraudulent business activity. *Id*. at ¶¶ 89–91. Ross-Davis also alleges that in November 2022—six days before Blackwell abused his first victim—another officer with the North County Police Cooperative drove outside his designated parole area, did not activate his body camera, arrived at another person's home, and unlawfully detained and battered the man (Doc. 20 at ¶¶ 97–110). According to Ross-Davis, despite other officers witnessing the wrongdoing, the offending officer was allowed to remain employed with the North County Police Cooperative until April 2023, and Defendants Buchanan and Unknown Supervisor did not change any policies or practices to prevent officers from physically abusing detainees. *Id*. at ¶¶ 101–03.

Ross-Davis brings this suit against the City, Chief Buchanan, Unknown Supervisor, Unknown Intake Manager, Unknown Responding Officer, and Marcellis Blackwell. Ross-Davis sues Blackwell, Unknown Intake Manager, Unknown Supervisor, and Chief Buchanan in their individual capacities. *Id*. at ¶¶ 4, 6, 9, 12. Defendants City and Chief Buchanan now move to dismiss Counts III, IV, V, and VI against them (Doc. 22).[2]

## II. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id*. It is not, however, a "probability requirement." *Id*. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must include either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015) (internal quotation marks omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Twombly*, 550 U.S. at 556. At this stage, the Court accepts as true the factual allegations in the complaint. *Id*.

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and

---

[2] Also pending before this Court is Defendants' Motion to Dismiss (Doc. 12). Defendants filed their motion to dismiss before Plaintiff filed an amended complaint. Because "[g]enerally, an amended complaint supercedes an original complaint and renders the original complaint without legal effect," *Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019) (internal quotation marks omitted) the Court denies as moot Defendants' Motion to Dismiss (Doc. 12).

common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id*.

## III. Application of Law to Facts

### A. Counts III & IV Against the City: Failure to Supervise and Train under 42 U.S.C. § 1983

The Operative Complaint alleges that the City is liable under § 1983 for constitutional violations because the City failed to supervise Blackwell in a way that prevented sexual abuse of detainees (Count III) (Doc. 20 at ¶ 192). Further, the Operative Complaint alleges that the City is liable under § 1983 because the City failed to train staff to ensure detainees would not be sexually abused (Count IV). *Id*. at ¶ 209. The City moves to dismiss Counts III and IV against it on the basis that the Operative Complaint does not adequately allege the City was aware of Blackwell's misconduct (Doc. 22 at 7). Specifically, the City argues that nothing in the Operative Complaint suggests that the City knew about prior abuses or had notice of a pattern of unconstitutional acts. *Id*.

#### i. Legal Standard

42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory…subjects or causes to be subjected, any citizen of the United States…to the deprivation of any rights…secured by the Constitution and laws, shall be liable to the party injured in an action at law….

The *Monell* doctrine states that municipalities count as "person[s]" who may be held liable under § 1983 for unconstitutional actions. *Monell v. New York City Dept. of Social Servs*., 436 U.S. 658, 690 (1978). But "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. at 691. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (cleaned up). Plaintiff brings his claims under the failure to train or supervise theory. (Doc. 20 at 32, 34).

Section 1983 claims against municipalities for failure to train require the same analysis as failure to supervise. *Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1216 (8th Cir. 2013). To survive a motion to dismiss on either theory, Plaintiff Ross-Davis must establish "(1) [The City's] officer-training practices were inadequate; (2) [the City was] deliberately indifferent to the

rights of others in adopting these training practices, and [the City's] failure to train was a result of deliberate and conscious choices it made; and (3) [the City's] alleged training deficiencies caused [Ross-Davis'] constitutional deprivation." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir.1996)). "Deliberate indifference is a stringent standard of fault." *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). "Neither claim can succeed without evidence the municipality received notice of a pattern of unconstitutional acts committed by its employees." *Atkinson*, 709 F.3d at 1216 (cleaned up). Because notice is required for deliberate indifference, notice "is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Id.*

**ii. Failure to Supervise**

As this district has already observed in a case against Blackwell by a different victim, "[t]he Court has found no controlling case law that requires this heightened level of supervision for police officers without a record of prior misconduct." *Taylor v. N. Cnty. Police Coop.*, 2024 WL 4533523, at *6 (E.D. Mo. Oct. 21, 2024). Though reviewing Blackwell's bodycam footage, mileage reports, police reports, and suspicious behavior might have led Defendants City of Vinita Park, Chief John Buchanan, and Unknown Supervisor to discover Blackwell's wrongdoings, that is not the standard for *Monell* liability. Failure to train and failure to supervise claims require allegations that the City had *actual* notice of a pattern of unconstitutional acts. *Atkinson*, 709 F.3d at 1216–17. That is not the case here. Taking all of Ross-Davis' allegations as true, nothing indicates that the City actually knew that Blackwell was sexually assaulting detainees.

Reviewing Blackwell's body camera footage may have revealed that he turned his camera off while on the job, but it would not have revealed that he was sexually assaulting detainees. Checking Blackwell's mileage also may have tipped off the Department that something was amiss, but it would not give them notice of a pattern of sexual assault. Even if an intake manager had reason to be *generally suspicious* of Blackwell's behavior because he transported detainees to the police station and then—despite accusations against the detainees—would transport them back home, it would not put the intake manager on notice that Blackwell was committing sexual assaults *in particular*.

To the extent Ross-Davis alleges that the City knew of a pattern of unconstitutional misconduct based on *another officer's* previous abuse, this argument also fails. Ross-Davis alleges that in November 2022, six days before Blackwell abused his first victim, another officer drove

outside his designated parole area, did not activate his body camera, arrived at another person's home and unlawfully detained and battered the man (Doc. 20 at ¶¶ 97–110). According to Ross-Davis, despite other officers witnessing the wrongdoing, the offending officer was allowed to remain employed with the North County Police Cooperative until April 2023, and Defendants did not change any policies or practices to prevent officers from physically abusing detainees. *Id*. at ¶¶ 101–03. But physically abusing a detainee in front of other officers once is not substantially similar to taking multiple arrestees to a secluded area and sexually abusing them. Nor is one instance a "pattern." *See Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) ("Under our precedent, a single incident cannot serve as notice for a pattern of misconduct); *Taylor*, 2024 WL 4533523, at *4 ("Physically abusing a detainee in front of other officers is not substantially similar to taking an arrestee to a secluded area and sexually abusing him.").

Ross-Davis also alleges that not investigating Blackwell prior to hiring him constituted failure to supervise (Doc. 22 at ¶¶ 89–96). Ross-Davis alleges that Blackwell previously went by the name Willis Green Overstreet III and that he was involved in illegal and fraudulent business activity involving falsification of records, which would have been apparent to anyone conducting a background check. *Id*. These facts are not a pattern of unconstitutional conduct—specifically sexual assault. Nor do they constitute deliberate indifference, as the Court is aware of no caselaw suggesting that failure to conduct an adequate background check amounts to deliberate indifference. *See Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("A negligent failure to check every reference or every past employment record does not evidence deliberate indifference on the part of the city."). Deliberate indifference requires a heightened standard of proof that "mere negligence" does not meet. *Id*. (*quoting Stokes v. Bullins*, 844 F.2d 269, 273 (5th Cir. 1988)).

Because Ross-Davis does not sufficiently allege the notice requirement, the Court need not address Ross-Davis' arguments addressing the other elements of a failure-to-supervise claim (training adequacy, deliberate indifference, failure to train being a deliberate and conscious choice, and causation).

**iii. Failure to Train**

Next, Ross-Davis seeks to hold the City liable through a failure to train theory (Doc. 20 at ¶¶ 206–22). Ross-Davis argues that Defendants failed to properly train staff to ensure that detainees would not be sexually abused or otherwise harmed by police officers. *Id*. at ¶ 209. Ross-Davis alleges sexual offenses and abuse by law enforcement are well-known issues and cites

several articles documenting law enforcement sexual abuse (Doc. 20 at ¶¶ 122–28). Ross-Davis notes that six other St. Louis Metropolitan Area departments have undertaken training to identify and prevent sexual misconduct by police officers, but North County Police Cooperative is not one of them (Doc. 20 at ¶¶ 128–29). The City argues that this claim should be dismissed for the same reason as the failure to supervise claim—because Ross-Davis does not claim that the City knew about Blackwell's sexual abuse and that the City ignored Blackwell's actions instead of implementing additional or improved training (Doc. 22 at 13). Defendants claim that the Operative Complaint does not allege sufficient facts to support the elements of deliberate indifference and causation. (Doc. 22 at 9, 13–14).

The same analysis applies to the failure-to-train claim as applied to the failure-to-supervise claim above. *Atkinson*, 709 F.3d at 1216. As discussed *supra*, the Operative Complaint fails to allege facts establishing that the "municipality received notice of a pattern of unconstitutional acts committed by its employees." *Id*. (cleaned up). That said, "notice of a pattern of unconstitutional behavior need not be shown where the failure to train employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (internal quotation marks omitted). The Operative Complaint suggests that the need to train was patently obvious because there are various articles on law enforcement sexual abuse and because other police departments in the St. Louis area have undergone training on this issue (Doc. 20 at ¶¶ 122–29; Doc. 32 at 9–10).

The Eighth Circuit has already rejected the argument that that there is a "patently obvious need to train an officer not to sexually assault [ ], especially where there is no notice at all that such behavior is likely. An objectively reasonable officer would know that it is impermissible to touch a detainee's sexual organs by forcible compulsion." *Parrish v. Ball*, 594 F.3d 993, 999 (8th Cir. 2010). Though "it may have been wise to tell officers not to sexually assault detainees, it is not so obvious that not doing so would result in an officer actually sexually assaulting a [ ] detainee." *Id*. The mere fact some other police departments conduct training on sexual assault by officers does make this a patently obvious need.

Ross-Davis relies on *S.M. v. Lincoln County*, where a jury found that a municipality was deliberately indifferent for failure to supervise a lieutenant who sexually abused Drug Court participants. 874 F.3d 581, 583 (8th Cir. 2017). This case is distinguishable for the same reasons

it was distinguished in *Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019). As the *Doe* Court noted:

> Because the municipality did not object, this court could not review the jury instructions, which 'arguably did not give the jury an accurate sense of how rigorously the [deliberate indifference] standard must be applied.' *Id.* at 588. With a 'deferential standard[ ] for review,' this court upheld the jury's determination because there was at least some evidence of 'misconduct ... that should have been obvious' to other Drug Court team members. *Id.* at 584, 588. Doe presented no such evidence. Because *S.M.* is distinguishable, it does not control this case.

*Id*. at 1190–91. Here, though Blackwell's conduct was unusual, it was not inherently obvious that *sexual misconduct* was taking place. *See supra* Part III(A)(ii). Thus, *S.M.* does not control here either.

Ross-Davis fails to show the City had notice or that failure to train employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious. Because the claim fails on this basis alone, the Court need not address the other elements of a failure-to-train theory of liability.

### B. Counts III & IV Against Chief Buchanan: Failure to Supervise and Train under 42 U.S.C. § 1983

#### i. Legal Standard

Liability under § 1983 attaches to supervisors only "through th[at] official's own individual actions" because vicarious liability does not apply in § 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "A supervisor may be held individually liable under § 1983 if [he] directly participates in the constitutional violation or if [he] fails to train or supervise the subordinate who caused the violation." *Riehm v. Engelking*, 538 F.3d 952, 962–63 (8th Cir. 2008) (cleaned up); *Arnett v. Norris*, 160 F.4th 921, 929 (8th Cir. 2025) ("A supervisor may be liable under § 1983 if 'his failure to properly supervise and train the offending employee caused the constitutional violation at issue.'") (quoting *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).

A supervisor is liable if he or she "(1) had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right; (2) was deliberately indifferent to or authorized such violations; (3) failed to take remedial action; and (4) that failure caused the inmate's injury." *Id*. Ultimately, Ross-Davis must demonstrate that "the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowle*r, 98 F.3d 1069, 1078 (8th Cir. 1996). "To establish supervisory

liability as to" Chief Buchanan, Ross-Davis "must have sufficiently pleaded that" Chief Buchanan "had notice of a pattern of conduct that was sufficiently egregious in nature." *Troupe v. Young*, 143 F.4th 955, 972 (8th Cir. 2025) (internal quotations omitted).

**ii. Failure to Supervise and Failure to Train**

Because Ross-Davis seeks to hold Chief Buchanan liable as supervisor but does not allege that he was directly involved in the unconstitutional conduct, Ross-Davis must allege that Chief Buchanan had notice of a pattern of unconstitutional conduct. Ross-Davis's arguments for why Chief Buchanan had notice of a pattern of unconstitutional misconduct are largely the same as his arguments for why the City had notice (Doc. 20 at 32, 34). All these arguments fail.

The only allegations applicable to Chief Buchanan but not the City are that, "[o]n information and belief, Defendants Buchanan and Unknown Supervisor were aware of the November 2, 2022, incident [where another officer abused a civilian]." (Doc. 20 at ¶ 102). Ross-Davis posits that despite this knowledge, Buchanan did not change any policies or practices to prevent officers from abusing detainees. *Id*. at ¶ 103. Ross-Davis also asserts that "[o]n information and belief, Defendant Unknown Intake Manager communicated Defendant Blackwell's suspicious behavior to others at the North County Police Cooperative, including Defendant John Buchanan, but no one took any action to investigate Defendant Blackwell." *Id*. at ¶ 88.

Chief Buchanan's knowledge of one abusive instance by *another officer* is insufficient to put Chief Buchanan on notice of a pattern of conduct by a subordinate that violated a clearly established constitutional right. That is because "[t]o impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability." *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012). Physically abusing a detainee in front of other officers is not substantially similar to taking an arrestee to a secluded area and sexually abusing him.

Regarding Ross-Davis's allegation that an intake manager communicated Blackwell's suspicious behavior to Chief Buchanan, this too is insufficient to establish Buchanan was on notice. Taking the Complaint as true, the most this alleges is that Chief Buchanan was aware of suspicious behavior. But what is needed to prevail on this claim is sufficient information that Buchanan was aware of "a pattern of conduct … that *violated a clearly established constitutional right*." *Arnett*, 160 F.4th at 929 (emphasis added). Chief Buchanan needed to have "notice of a pattern of conduct that was sufficiently egregious in nature." *Troupe*, 143 F.4th 972. Transporting arrestees home

after bringing them to the station is odd, but not sufficiently egregious to establish notice and hold Chief Buchanan liable.

Because Ross-Davis has failed to establish that Chief Buchanan had knowledge of Blackwell's sexual misconduct, the Court grants Chief Buchanan's Motion to Dismiss Counts III and IV against him.

**C. Count V: § 1983 Failure to Establish Policies or Official Customs to Protect Plaintiff**

Ross-Davis alleges that Defendants failed to establish policies or official customs to protect him, resulting in the violation of his civil rights (Doc. 20 at ¶¶ 226, 233). Ross-Davis alleges that the City and Chief Buchanan deliberately failed to establish policies for North County Police Cooperative to ensure that detainees would not be sexually abused or otherwise harmed by police officers (Doc. 20 at ¶¶ 225–26). Specifically, Ross-Davis alleges:

> Defendants failed to establish policies or official customs to ensure the North County Police Cooperative appropriately investigate [sic] and evaluate [sic] police officer candidates, assigned police officers to monitor each other, required and reviewed video and audio recordings of interactions between officers and detainees, tracked travel of officers while with detainees, informed staff how to identify and report abusive conduct by other staff members, reviewed police reports, and trained staff to accept, investigate, verify, and act upon complaints regarding police officers' abusive conduct.

*Id*. at ¶ 228. Ross-Davis pleads that Defendants were aware that sexual offenses, physical abuse, fraudulent reporting, and abuse of authority were well-known issues within police departments generally and that other police departments have received training on these issues (Doc. 32 at 16). According to Ross-Davis, a failure to supervise Blackwell demonstrated "deliberate indifference to the constitutional rights of the citizenry." *Id*. at 17.

Defendants seek to dismiss on the basis that—like the failure-to-supervise and failure-to-train claims—the Operative Complaint failed to plead that Defendants had notice of the need for additional policies, which means that the Operative Complaint failed to plead deliberate indifference by Defendants (Doc. 22 at 15–16). Specifically, Defendants argue that the Operative Complaint pled no facts showing that Defendants were aware of any prior sexual abuse by Blackwell or by other officers that would necessitate implementation of additional policies. (Doc. 22 at 16).

**i. Legal Standard**

"A written policy that is facially constitutional, but fails to give detailed guidance that [may avert] a constitutional violation by an employee does not itself give rise to municipal liability." *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 392 (8th Cir. 2007). "[O]nly where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.'" *Id*. Inaction can either stem from a history of constitutional violations "such that the need for additional training or supervision was plain," or a single violation "accompanied by a showing that the municipality had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Szabla*, 486 F.3d at 392–93 (internal quotation marks omitted); *see also Thurmond v. Ryals*, 2021 WL 885993, at *3 (E.D. Ark. Mar. 9, 2021) (concluding the same). "The standard for deliberate indifference is objective; a government entity is liable if it has maintained 'a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights' that the policymakers can be said to have been deliberately indifferent." *Moyle v. Anderson*, 571 F.3d 814, 818–19 (8th Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "[S]imple or even heightened negligence will not suffice." *Id*. And "[n]otice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1216 (8th Cir. 2013).

**ii. Application of Law to Facts**

Count V fails for the same reason Counts III and IV fail—because the Operative Complaint does not adequately allege the notice required for deliberate indifference. Knowledge that another officer physically abused a person in a non-sexual manner in front of other officers would not put the City or Chief Buchanan on notice of Blackwell's furtive, sexual behavior. Nor does it demonstrate maintenance of "a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights' that the policymakers can be said to have been deliberately indifferent." *Moyle*, 571 F.3d at 818–19 (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989). Even if the City was on notice of this occurrence, such an "isolated incident cannot support a claim that the City acted with deliberate indifference." *Szabla*, 486 F.3d at 393 (cleaned up).

To the extent Ross-Davis argues that the notice element is met because of Blackwell's previous sexual misconduct, (Doc. 20 at ¶ 82), the Defendants did not know about it. Though

reviewing Blackwell's reports and body-camera footage may have alerted Defendants to unusual behavior, it would not have notified Defendants of Blackwell's sexual misconduct and a history of constitutional violations. The Operative Complaint does not allege "a pattern of constitutional violations making it 'obvious' that additional training or safeguards are necessary." *Szbala*, 486 F.3d at 392. *See Atkinson*, 709 F.3d at 1216 (holding that no reasonable jury could find a city's lack of a written use-of-force policy was likely to result in a constitutional violation where the plaintiff submitted no evidence of excessive force by the offending officer or another city police officer). Relatedly, Blackwell's previous alleged fraud, which Ross-Davis alleges would have been found via a background check, does not rise to the level of deliberate indifference. A municipality cannot be held liable under § 1983 for negligently hiring its employees, *Brown*, 520 U.S. at 415–16, as the standard of fault in municipal liability claims is deliberate indifference. *Szabla*, 486 F.3d at 390.

The fact that other police departments train officers on sexual abuse does not mean Defendants are deliberately indifferent for not doing so. If this were so, any time any police department offered training, all other police departments would have to offer the same training to avoid § 1983 liability. The Constitution does not require Defendants to address every possible risk. *Kern v. St. Charles Cnty., Missouri*, 2022 WL 1262507, at *14 (E.D. Mo. Apr. 28, 2022); *see Andrews*, 98 F.3d at 1077 (holding there is no patently obvious need for a city to train officers not to rape young women). The Court dismisses Count V.

### D. Count VI: Establishment of a Pattern or Practice Whereby Detainees are Not Protected from Harm under 42 U.S.C. § 1983

In Count VI, Ross-Davis alleges that Defendants violated the constitution by establishing a pattern or practice whereby detainees would be subject to police officer abuse (Doc. 20 at ¶¶ 244–45). Defendants argue that Count VI should be dismissed because the Operative Complaint lacks facts showing a widespread history of the City failing to discipline officers who physically assaulted citizens (Doc. 22 at 16). Defendants argue that a single incident of abuse does not constitute a pattern and that the previous officer's non-sexual abuse was not similar to the events in this case. *Id*. at p. 17.

#### i. Legal Standard

To allege an unofficial custom under *Monell*, a plaintiff must allege a "widespread, persistent pattern of unconstitutional misconduct." *Snider v. City of Cape Girardeau*, 752 F.3d

1149, 1160 (8th Cir. 2014). "The pattern of unconstitutional conduct must be so pervasive and widespread so 'as to have the effect and force of law.'" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)). A custom is demonstrated by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (cleaned up). While an unconstitutional custom claim cannot be predicated on a single act, *see Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986 (8th Cir. 2016), the Eighth Circuit has not articulated whether a minimum number of incidents is required to demonstrate a custom.

**ii. Application of Law to Facts**

Ross-Davis argues that the pattern of unconstitutional misconduct can be and is established both via a past officer's non-sexual physical abuse of a citizen and via Blackwell's prior sexual assaults of detainees. Not so. Both are insufficient to establish the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct.

Regarding a previous officer's abuse, this one incident is not pervasive enough to establish a pattern. "A single incident normally does not suffice to prove existence of a municipal custom." *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999); *Thiel v. Korte*, 954 F.3d 1125, 1129 (8th Cir. 2020) ("Although [Plaintiff] alludes to prior complaints against [two sheriff deputies], he fails to provide the details necessary for us to determine whether these complaints were sufficiently numerous, or involved conduct sufficiently similar to what is alleged here, to make out the existence of an actionable custom.").

Regarding Blackwell's previous abuse, even if this could establish a pervasive pattern, the Operative Complaint does not establish "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials *after notice to the officials of that misconduct*." *Ware*, 150 F.3d at 880 (cleaned up) (emphasis added). The Operative Complaint does not include information to establish that Chief Buchanan or other city officials actually knew of Blackwell's abuse. *See supra* Part III(A)(ii). Ross-Davis' allegation that Defendants knew detainees would be subject to abuse simply because they knew that punishing abuse would

exacerbate an officer shortage is not enough to establish that Defendants were actually aware of Blackwell's misconduct. Accordingly, the Court dismisses Count VI against Chief Buchanan and the City.

## CONCLUSION

This Court **GRANTS** Defendants' Motion to Dismiss (Doc. 21).

Dated this 20th day of August, 2026.

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE